HOFFMAN et al. v. SHELL OIL CO., Inc., et al.

SHELL OIL CO., Inc., et al. v. HOFFMAN et al.

Nos. 33959, 33962.   July 10, 1951.

Rehearing Denied Sept. 11, 1951.

*235 P. 2d 696.*

---

Geo. W. Cunningham, Gordon Watts, Redmond S. Cole, and Robert L. Imler, Tulsa (George W. Bowen, ·Forrest M. Darrough, Ralph W. Garrett, Wm. C. Liedtke, and Russell G. Lowe, Tulsa, Frank Bacon, L. L. Corn, Bartlesville, Don Emery, Oklahoma City, Rayburn L. Foster, and R. B. F. Hummer, Bartlesville, and Felix Duvall, Ponca City, of counsel), for plaintiffs in error.

Charles B. Duffy and R. O. Wilson, Ponca City, and Herbert A. Hoffman, Chicago, Ill., for defendants in error.

O'NEAL, J. This is an equitable action commenced in the district court of Noble county by Ednabelle Hoffman, Dave Schonwald, Emanuel Schonwald, Harold Schonwald, Junia Cassell, and Sam Schonwald, defendants in error in case No. 33962, against Shell Oil Company, Incorporated, a corporation; Cities Service Oil Company, a corporation; Gulf Oil Corporation, a corporation; Sun Oil Company, a corporation; L. H. Wentz; Phillips Petroleum Company, a corporation; Carter Oil Company, a corporation; and Sinclair-Prairie Oil Company, a corporation, for the cancellation of an oil and gas lease covering the west half of the northeast quarter of section 20, township 20 north, range 2 west in Noble county, and for damages alleged to have been caused by failure of defendants to properly develop the leased premises and failure to protect said leased premises against drainage of oil therefrom to adjacent land. While the case was pending in the district court plaintiff, Sam Schonwald, died, and the cause was revived as to him in the name of Milton Schonwald, executor of the estate of Sam Schonwald, deceased.

The trial court denied the petition to cancel the oil and gas lease as to any portion of said premises, but awarded judgment in favor of the plaintiffs for damages caused by drainage in the sum of $60,000. Both sides lodged separate appeals in this court.

Plaintiffs below having appealed in case No. 33959, and defendants below having appealed in case No. 33962, the two cases were consolidated for the purpose of briefing under case No. 33962.

Plaintiffs below, plaintiffs in error in case No. 33959, also filed a cross-petition in error in case No. 33962. After the appeals to this court were perfected, defendant below, L. H. Wentz, died, and on February 14, 1950, the cause was revived as to L. H. Wentz in the name of M. P. Long and T. W. Prentice, executors of the estate of L. H. Wentz, deceased. Hereinafter the parties will be referred to as in the trial court; that is, Ednabelle Hoffman et al. will be referred to as plaintiffs, and the Shell Oil Company et al. will be referred to as defendants. The land involved will be referred to as the Schonwald eighty, and the oil and gas lease will be referred to as the Schonwald lease.

It is the contention of plaintiffs that under the evidence the Schonwald lease should have been canceled, and that under the evidence and findings of fact by the trial court plaintiff should have judgment for the full amount sued for, that is, not less than $1,404,-087. The contention of defendants is

that under the overwhelming weight of the evidence the leased premises were properly developed, and that the trial court was correct in refusing to cancel the Schonwald lease as to any part of said premises. Defendants further contend that the evidence shows that there was no drainage, and that there is no evidence whatever to sustain the judgment for $60,000, or any other sum. This calls for examination of all the evidence, which consists of some 2,450 pages of oral testimony and copies of exhibits.

The record shows that plaintiffs are the owners of the west half of the northeast quarter of section 20, township 20 north, range 2 west of the I. M., Noble county, which is within the oil producing limits of an oil field known as the Lucien Field in said county. Said land was leased for oil and gas purposes to Harold Schonwald on June 12, 1928. June 27, 1928, Harold Schonwald assigned the oil and gas lease to defendant, Shell Oil Company. June 28, 1932, Shell Oil Company assigned undivided interests in the lease to the other seven defendants and the Twin State Oil Company. This was done under the terms of a unit operation agreement entered into by the defendants dated February 11, 1932. The discovery well in the Lucien Field was completed October 24, 1932. It was drilled at about the center of the southeast quarter of the northwest quarter of section 17, township 20 north, range 2 west, about five-eighths of a mile north and one-eighth of a mile west of the northwest corner of the Schonwald eighty. The Lucien field is divided into two parts, known as the North Lucien field and the South Lucien field. The North Lucien field extends from the north, in the north part of section 8, to about the south line of sections 27, 28 and 29, township 20 north, range 2 west. The South Lucien field extends from a short distance north of the center line of sections 32, 33 and 34, township 20 north, to a short distance north of the center line of sections 3 and 4 in township 19 north, range 2 west. There is a strip between the two fields about one-half mile in width in which the structure is somewhat lower and which produces little or no pay production of oil and gas.

In the Lucien field there appears to be some three different strata, or formations, which are in some areas oil producing. They are referred to in the record by several different names, but generally they are known in the order of their depth as the First Wilcox sand, the Green Shale zone, and the Second Wilcox sand. (In this connection it is explained that the difference between the First Wilcox sand and the Second Wilcox sand is that the First Wilcox sand is in the nature of a sandstone formation, that is, the sand is cemented together so as to form a sandstone, while the second Wilcox sand is in the nature of a loose sand. The Green Shale formation is made up or composed mainly of shale, limestone and dolmite.)

The land covered by the leases owned by defendants is referred to as community acreage and includes all of section 8 and the southeast quarter of section 7, the east half of section 18, all of section 17, the northeast quarter of section 19, and the northwest quarter and the west half of the northeast quarter of section 20. The North Lucien field was fully developed between 1932 and 1937. With one or two exceptions all the wells in the North Lucien field, without as well as within the area covered by the community leases, were drilled on the basis of one well to 40 acres. Some of the wells were not located exactly in the center of the 40-acre tract but near the center thereof. The Schonwald eighty is in the North Lucien field.

The South Lucien field was developed from 1935 to 1937. The crestal area of that field (that part thereof where the oil structure is of the higher elevation) was drilled on a closer spacing pattern, mostly on a ten-acre basis. The average acreage is something over eleven acres to the well. The wells on

the flank or slope of the structure were mostly on a 40-acre spacing, except where necessary to offset a well in the crestal area.

About September 1, 1933, defendants completed the first well on the Schonwald eighty. It is located at about the center of the north half, or the north 40 acres, of the Schonwald eighty. It was drilled to a total depth of 3,915 feet below sea level, into but not through the First Wilcox sand. It was not drilled into the Green Shale Zone, nor into the Second Wilcox sand. It had an initial daily production of 11,250 barrels of oil and 5,200,000 cubic feet of gas. At the date of the trial, June, 1946, it was still producing oil at the rate of about 84 barrels per day. About April 26, 1934, defendants completed their well No. 2 on the Schonwald eighty. It is located at about the center of the south 40 acres, and was drilled to a depth of 3,927 feet below sea level. It was drilled through the First Wilcox sand and about two feet into the Green Shale formation. They found the top of the First Wilcox sand at 3,864 feet below sea level and found the top of the Green Shale zone at 3,925 feet below sea level. The log of said well shows that it was dry in the Green Shale zone. It was productive in the First Wilcox sand, and had an initial daily production of 6,785 barrels of oil and 7,000,000 cubic feet of gas. At the time of the trial that well had ceased to produce and had been abandoned and plugged. As of October, 1943, it had produced 321,423 barrels of oil of the average value of $1.20 per barrel. No other wells have been drilled on the Schonwald eighty.

In their original petition, which was against Shell Oil Company alone, plaintiffs alleged, in substance, that offset wells and wells on other tracts adjoining said leasehold on the east, southeast, south, southwest and west had been drilled and defendants had permitted and suffered plaintiffs' lands to be drained of the oil under same by failing, neglecting and refusing to drill wells on plaintiffs' land offsetting said wells drilled on adjacent lands. They alleged that by reason of said drainage plaintiffs had been damaged in the sum of $25,000 for which sum they prayed judgment. They also prayed for cancellation of the oil and gas lease, except as to ten acres surrounding well No. 1. In a second cause of action plaintiffs alleged failure to fully and properly account for the gas produced from said premises to the extent of $5,000 and prayed for an accounting for the gas produced from said premises. In their amended and supplemental petition, plaintiffs abandon the claim for failure to fully account for the gas produced from said premises. In their amended petition plaintiffs alleged, in substance, that in order to properly and efficiently develop the leased premises for oil and gas it was necessary to drill one well to each ten acres, or eight wells on the 80-acre tract; that defendants had drilled but two wells thereon, and that said two wells so drilled were completed to a depth so as to penetrate and test only the First Wilcox sand, and that no well or wells have been drilled thereon to a depth sufficient to penetrate and test the Green Shale formation, or the Second Wilcox sand. Here it may be noted that the Green Shale zone, or formation, is also referred to in the record as the Marshall Green Shale zone. Plaintiffs further alleged that defendants carelessly and negligently ruined the Shell-Schonwald Well No. 2 and thereby destroyed the production therefrom, and thereafter unreasonably failed, refused and neglected to drill a new well to replace the well so ruined, and the defendants failed, refused and neglected to drill and operate wells sufficient in depth to prevent the drainage of oil from said leased premises and each producing structure underlying same, through other wells on lands adjacent thereto and more remote therefrom, but close enough that oil could be and was drained therefrom; that defendants conspired among themselves and other producing oil companies to unreasonably restrict

drilling in the northern portion of said Lucien field to only one well to each 40 acres, to the damage and detriment of plaintiffs; that defendants unnecessarily suffered and permitted plaintiffs' land to be drained of the oil underlying said land, and unreasonably failed, refused, and neglected to diligently develop and operate said leased premises. They prayed for the cancellation in whole of said oil and gas lease, or in the alternative the cancellation of all thereof except as to a tract of land not to exceed five acres in a square form immediately surrounding Well No. 1 thereon. In a second cause of action plaintiffs alleged that by reason of the drainage of oil from plaintiffs' land, as above alleged, plaintiffs have been damaged in the sum of $1,426,182.76 for which sum plaintiffs prayed judgment. Defendants, other than the Carter Oil Company, filed joint and several answers to the amended and supplemental petition as to each cause of action. These answers consist of a general denial with the exception of certain formal allegations, and then plead the statute of limitations, 12 O.S. 1941 §95, subds. 1, 2, 3, and 6.

There is no evidence whatever tending to prove the allegations of plaintiffs' petition as to alleged negligence of defendants having destroyed Well No. 2 on the Schonwald lease. The claim to that extent goes out of the case.

The trial court made some 63 findings of fact, and nine conclusions of law. After the findings of fact and conclusions of law were made, counsel for plaintiffs filed a motion to correct the conclusions and the judgment. Defendants filed a request for additional findings of fact. The motion of plaintiffs and the request of defendants were denied and plaintiffs and defendants each filed a motion for new trial. The motions for new trial were overruled and plaintiffs appealed (case No. 33959) and defendants also appealed (case No. 33962). Plaintiffs also filed a cross-petition in error in case No. 33962 which is substantially the same as their petition in error in case No. 33959.

Plaintiffs first contend that the trial court erred in computing the amount of damages which should have been awarded plaintiffs as appears on the face of the findings of fact and conclusions of law. This includes an alleged error of the trial court in overruling the motion of plaintiffs to correct and amend the conclusions of law and judgment and decree.

In view of the conclusions we have reached as to the sufficiency of the evidence as a whole, it becomes unnecessary to consider the alleged error concerning the calculation of the amount of damages suffered by plaintiffs.

Plaintiffs contended at the trial, and their principal expert witness, Dorsey Hager, testified that there were no offset wells in the North Lucien field because the wells were all drilled on the basis of one well to each 40 acres. Mr. Hager asserted that oil wells do not offset each other unless they are drilled on the basis of no more than ten acres to each well. The apparent reason for this contention is that oil will not drain from one lease, or location, to another where the wells thereon are drilled more than 330 feet from the sidelines of the lease on which they are located. This is inconsistent with plaintiffs' claim that oil was drained from their land, the Schonwald eighty, to wells drilled more than 660 feet distant therefrom. Furthermore, it is now common knowledge that in many oil fields in the state wells are spaced on 40-acre locations. As examples defendants point to the following fields: Billings, Colvin, Lamont, Lovell, Coffee and West Edmond fields. In some instances the Corporation Commission has entered an order that oil wells be spaced 40 acres to the well.

The record does show that most, if not all, the wells drilled in the crestal area of the South Lucien field were spaced on the basis of ten acres to the well. But the South Lucien field was developed some years after the North Lucien field. The wells in the South

Lucien field were nearly two miles south of plaintiff's land. There is no evidence tending to prove that any of the wells drilled in the South Lucien field drained oil from plaintiffs' land, or in any way affected the production of oil from the Schonwald eighty.

Plaintiffs further contend that defendants did not properly and efficiently operate said lease so as to produce all of the producible oil in the First Wilcox sand. Plaintiffs assert that the record shows that there was a total of 4,538,425 barrels of producible oil in the First Wilcox sand under the Schonwald eighty acres before any development, and that some 3,288,425 barrels thereof was not produced, which was permitted to drain to wells on adjacent land. The record shows that all the oil produced from the Schonwald eighty was produced from the First Wilcox sand. At the time of the trial total production on the Schonwald eighty was 1,198,373 barrels. There were six direct and four diagonal offset wells spaced 40 acres to the well. Seven of the offset wells had produced a total of 725,388 barrels of oil from all the sands, an average of about 30,000 barrels to the well. The production of three of the offset wells was not shown, but allowing them an average production of the other seven offset wells, the total production from all the ten offset wells from all sand was approximately 815,388 barrels. That would show a total production from the two wells drilled in the First Wilcox sand in the Schonwald eighty of about 382,985 barrels more than was produced from all the ten offset wells from all the sands. The average production per acre from the Schonwald eighty was about 14,979 barrels, and Schonwald Well No. 1 was still producing oil at the rate of about 84 barrels per day. That would indicate that if there was any drainage it was toward rather than from the Schnowald eighty. Certainly, it does not indicate that the Schonwald eighty was not adequately and efficiently developed for oil and gas in the First Wilcox sand. There was no ground for cancellation of the lease, in whole or in part, for failure to develop the land for oil and gas in the First Wilcox formation.

This brings us to consideration of the sufficiency of the evidence to support the findings and judgment in favor of defendants for a money judgment in the sum of $60,000.

Defendants contend that many of the findings of fact and conclusions of law are not sustained by the evidence.

Under finding of fact No. 15, the trial court found that the Marshall Green Shale zone c o n t a i n e d substantial amounts of oil throughout its thickness, and that almost every well in the Lucien field produced therefrom or had opportunity to produce therefrom because said formation was drilled and left open in most wells; that Shell-Schonwald Wells No. 1 and No. 2, Shell No. 1 Whitten Well, and Shell-Moehling Well No. 2, were unable to produce from the Green Shale zone because though present above water level under each of said wells, same was not drilled or completed to produce from said Green Shale zone. The latter part of that finding of fact, insofar as it relates to the Shell-Schonwald No. 2 well, is contrary to the evidence. The uncontradicted evidence, as shown by the log of the well made long before this lawsuit was thought of, is that said well was drilled two feet into the Green Shale zone, and that said formation in said well was dry. The trial court, in finding No. 20, found that from the total depth to which the Shell-Schonwald Well No. 1 was drilled, to the water level under same, there is approximately 113.5 feet of undrilled oil section: About twelve feet of First Wilcox sand, Marshall Green Shale zone 36.5 feet, and Second Wilcox sand about 65 feet. There is no evidence that the Green Shale zone produced or was capable of producing oil in paying quantities in any well wherever drilled in the Lucien field. Therefore, finding of fact No. 20, insofar as it finds that there was 36.5 feet of oil producing formation in the Green Shale zone under

Shell-Schonwald No. 1, and finding of fact No. 42 "that the Marshall Green Shale zone is capable of yielding large amounts of oil and gas in commercial and paying quantities" are not supported by sufficient evidence.

Finding of fact No. 49½, insofar as the trial court found that: "It is not seriously, if at all, denied by defendants that the Marshall Green Shale zone, or sand . . . under the lease in question contained and held large amounts of oil . . ." is not supported by the record. Defendants insisted at the trial and assert in this appeal that there was no showing that the Green Shale zone, or sand, produced, or was capable of producing oil in paying quantities in any of the wells offsetting the Schonwald eighty. The defendants assert that their exhibit, Map D, shows seven of the eight offset wells and Shell-Schonwald Well No. 2 were dry in the Green Shale zone, and that the other three offset wells were nonpaying in the zone. The record bears out defendants' contention in this regard. There is no competent evidence showing any drainage of oil from the Schnowald eighty in the Green Shale zone.

The trial court held, in effect, that any liability of defendants for drainage of oil from the Schonwald eighty was for failure to drill additional wells or to deepen the two existing wells after the latter part of 1937. This is apparently on the theory that the trial court held the five-year statute of limitations prevented recovery for any drainage prior to the latter part of 1937.

We next consider the question of drainage of oil from the Schonwald eighty in the Second Wilcox sand after 1937. It is the custom in the oil producing business for the purpose of showing comparative depth of oil wells to show the depth thereof below a common level, that is, the sea level. The symbol used is a minus sign before the number of feet, thus "-1000" indicates the total depth of the well is 1,000 feet below sea level. The same is true with reference to the depth to which salt water is found in a well. The expression "salt water -1000" indicates that salt water was found at a depth of 1,000 feet below sea level. The trial court, in effect, found that in 1937 there was oil in paying quantities under the Schonwald eighty in the Second Wilcox sand, and above water level, and that it was the duty of defendants to drill additional wells on said lease or deepen the two existing wells to the Second Wilcox sand. Defendants contend that the record and uncontradicted evidence show that in 1937 the Second Wilcox sand under the Schonwald eighty was below water level, and if drilled into at that time would have produced no oil, but, instead, would have produced salt water. Thus it becomes material to determine the approximate salt water level under the Schonwald eighty in 1937.

The Shell-Schonwald Well No. 2 was completed about April 26, 1934. Therein the top of the First Wilcox sand was found at -3865 feet (3,865 feet below sea level). The court found that the First Wilcox sand was 60 feet thick. Well No. 2 was drilled through the First Wilcox sand and two feet into the Green Shale zone, a total depth of -3927 feet. It had an initial production of 6,875 barrels of oil and 7,000,000 cubic feet of gas all from the First Wilcox sand, since the log of the well shows that the Green Shale zone was dry in that well. That well continued to produce until April, 1937. At that time, after three years, it commenced producing salt water. There is evidence, and plaintiffs stated in their brief, that the parties agreed that the water level in the Lucien field rose at the rate of about one foot per year. That would indicate that the water level must have been -3930 feet in 1934 and about -3927 in 1937. That can hardly be reconciled with the finding of the court in finding No. 20 that the water under said land in 1933 was about 4,033 feet below sea level.

The trial court found (finding No. 20) that the Green Shale zone was 36.5 feet

thick, and (finding No. 12) that the bottom of the Green Shale zone was the top of the Second Wilcox sand. Therefore, the top of the Second Wilcox sand must have been at least 34.5 feet below the total depth of the Shell-Schonwald well No. 2, or at -3961.5 feet, which would be 34.5 feet below what the water level was in 1937. That would seem to preclude the possibility of obtaining oil from the Second Wilcox sand in 1937. But that is not all. In October, 1934, Community-Weber Well No. 2, an offset well to Shell-Schonwald Well No. 1 on the west, was flooded out by salt water and had to be plugged back at a depth of -3987. In October, 1937, Magnolia-Long Well No. 1, the second location south of the Shell-Schonwald No. 2, was flooded out in the Second Wilcox sand and had to be plugged back to -3952 feet. Community-Moehling Well No. 1, a north offset to Shell-Schonwald Well No. 1, started to make salt water in March, 1938, at its plugged back depth of -3961 feet.

The logs of the various wells were made long before this lawsuit was thought of and cannot be said to have been prepared for this lawsuit, and this is evidence showing the Second Wilcox sand was below the water level in 1937, and is not refuted by any evidence produced by the plaintiffs and clearly shows that there was no drainage of oil from the Schonwald eighty from the Second Wilcox sand. Certainly, under the facts shown, no prudent operator would have drilled to the Second Wilcox sand on the Schonwald lease after the early part of 1937.

The judgment of the trial court is affirmed insofar as it denies cancellation of the lease in whole or in part. The money judgment in favor of the plaintiffs is reversed and the cause is remanded with directions to enter judgment for defendants.

LUTTRELL, V.C.J., and WELCH, CORN, GIBSON, DAVISON, HALLEY, and JOHNSON, JJ., concur.